753 So.2d 376 (2000)
Michael LABICHE
v.
LOUISIANA PATIENTS' COMPENSATION FUND OVERSIGHT BOARD.
No. 98 CA 2880.
Court of Appeal of Louisiana, First Circuit.
February 18, 2000.
*378 Byron J. Casey, III, Metairie, Counsel for Plaintiff/Appellant, Michael Labiche.
Larry M. Roedel, Baton Rouge, Counsel for Defendant/Appellee, La. Patients' Compensation Fund Oversight Board.
Charles P. Blanchard, New Orleans, Counsel for Defendant/Appellee, La. Patients' Compensation Fund.
Before: CARTER, LeBLANC and PETTIGREW, JJ.
LeBLANC, J.
On August 23, 1991, Rhonda Labiche sustained a cardiorespiratory arrest and has remained in a coma since that date. She was originally hospitalized at Slidell Memorial Hospital, but on December 30, 1991, she was transferred to Montelepre Long Term Care Facility. Plaintiff, Michael Labiche, Mrs. Labiche's husband, filed a claim on January 9, 1992, alleging medical negligence by Mrs. Labiche's physician. On May 6, 1992, Mr. Labiche moved his wife home and began to provide her with custodial care.
A decision by the medical review panel found Mrs. Labiche's physician had deviated from the appropriate standard of care, and Mr. Labiche filed suit in federal court, based on diversity jurisdiction. Mr. Labiche agreed to a settlement wherein he released the physician and the Louisiana Patients' Compensation Fund (the Fund) from "any and all claims". The federal court approved the settlement, and on July 22, 1993, Mr. Labiche's claim was dismissed.
On November 1, 1993, Egan Health Care Services began to provide custodial care for Mrs. Labiche at her home. Mr. Labiche subsequently filed a claim with the Fund for the costs of custodial care he provided to his wife at their home from May 6, 1992 until November 1, 1993. After two hearings, the Louisiana Patients' Compensation Fund Oversight Board (the Board) awarded Mr. Labiche costs for custodial care he had supplied his wife for the time period July 22, 1993 through November 1, 1993, at a rate of $6.00 per hour, for sixteen hours per day. The Board denied his claim for custodial care costs from May 6, 1992 until July 22, 1993, finding his release "more likely than not, encompassed" these costs.
Originally, plaintiff sought review of the Board's decision in federal court, presuming jurisdiction remained there based on that court's approval of the earlier settlement agreement in the original malpractice action. However, the federal court ordered the request for review dismissed based on lack of subject matter jurisdiction. The federal court held the Louisiana Administrative Procedures Act, La. R.S. 49:950 et seq., placed subject matter jurisdiction in the district court.
Plaintiff, therefore, then sought review of the Board's decision in the 19th Judicial District Court, naming both the Board and the Fund as defendants. The Fund filed a declinatory exception raising the objection of lack of subject matter jurisdiction and a peremptory exception raising the objections of prescription, no cause of action and res judicata. The district court denied the Fund's exceptions of lack of subject matter jurisdiction and prescription and granted the exceptions of no cause of action and res judicata, dismissing plaintiff's *379 petition based on the release by Mr. Labiche.
This court, in Labiche v. Louisiana Patients' Compensation Fund Oversight Board, 96-1310 (La.App. 1 Cir. 5/9/97), 699 So.2d 408, affirmed the district court's dismissal of plaintiff's petition based upon the court's own exception raising the objection of peremption. This court held the period of time fixed by the governing statute for review of the Board's decisions is peremptive, rather than prescriptive. As peremptive, it was not subject to interruption by plaintiffs filing in federal court and was untimely when filed in district court. Labiche, 96-1310 at 4, 699 So.2d at 410. The Louisiana Supreme Court reversed and remanded this matter back to the district court, holding the plaintiffs petition was timely. Labiche v. Louisiana Patient's [sic] Compensation Fund Oversight Board, 97-2765, p. 1 (La.2/20/98), 706 So.2d 428.
Upon remand, the Fund and the Board filed peremptory exceptions raising the objections of res judicata and no cause of action. The defendants asserted the prior settlement by Mr. Labiche included his claim for costs of custodial care and therefore, his current claim for these costs was res judicata. The district court granted the exceptions and dismissed plaintiffs petition. In his oral reasons, the district court stated "I am going to observe the law of the case, and I am going to grant the exceptions of res judicata and no cause of action...."
On appeal, plaintiff asserts several legal arguments: 1) the "law of the case" doctrine is not controlling; 2) res judicata is not applicable; 3) dismissal of plaintiffs petition was error; and 4) the Board's award of $6.00 per hour was error.

I.
The law of the case doctrine applies to all prior rulings or decisions of an appellate court or the supreme court in the same case, not merely those arising from the full appeal process. Sanders v. Posi-Seal International, 95-0701, p. 3 (La.App. 1 Cir. 2/23/96), 668 So.2d 742, 745, writ denied, 96-0745 (La.5/10/96), 672 So.2d 924, (quoting Dodson v. Community Blood Center of Louisiana, Inc., 633 So.2d 252, 255 (La.App. 1 Cir.1993), writs denied, 93-3158, 93-3174 (La.3/18/94), 634 So.2d 850, 851). Under the doctrine, an appellate court generally will not, on a subsequent appeal, reconsider its earlier ruling in the same case involving the same parties who had their day in court, unless manifest injustice will result. Bell v. Roddy, 94-0298, p. 8 (La.App. 1 Cir. 10/7/94), 646 So.2d 967, 972, writ denied, 95-0440 (La.3/30/95), 651 So.2d 848, cert. denied, 516 U.S. 857, 116 S.Ct. 163, 133 L.Ed.2d 105 (1995). Some of the reasons for the doctrine include the avoidance of indefinite relitigation of the same issue, the desirability of consistency of the result in the same litigation, and the efficiency, and the essential fairness to both sides, of affording a single opportunity for the argument and decision of the matter. Petition of Sewerage and Water Board of New Orleans, 278 So.2d 81, 83 (La.1973).
However, the law of the case doctrine is a discretionary guide. It has no application when an appellate court reviews a ruling of the district court or when there is palpable error in a prior ruling. Landry v. Aetna Insurance Company, 442 So.2d 440 (La.1983).
In the instant matter, the district court originally granted the exceptions of res judicata and no cause of action. The ruling was appealed to this court. However, this court, on its own motion, recognized the peremptory exception of peremption and found the petition for review untimely. Labiche, 96-1310 at 2, 699 So.2d at 409. We specifically pretermitted any discussion of the correctness of the exceptions granted by the district court. Id. After remand by the supreme court, the defendants reurged the exceptions of res judicata and no cause of action, and the district court held the law of the case *380 controlled. By this appeal, the appellant seeks review and urges reversal of the grant of the exceptions raising the objections of res judicata and no cause of action. With no prior review or ruling by an appellate court on the correctness of the district court's original grant of the exceptions of res judicata and no cause of action, the law of the case doctrine is not applicable. The district court erred in applying this doctrine. We will consider the correctness of the district court's grant of the exceptions.

II.
The peremptory exception raising the objection of res judicata is based on the conclusive legal presumption of a thing previously adjudged between the same parties. Matthew v. Melton Truck Lines, Inc., 310 So.2d 691, 693 (La.App. 1 Cir.1975). While the doctrine of res judicata is ordinarily premised on a final judgment, it also applies where there is a transaction or settlement of a disputed or compromised matter that has been entered into by the parties. A release of claim or claims, when given in exchange for consideration, is a compromise and constitutes the basis for a plea of res judicata. Id. However, the authority of the thing adjudged resulting from the release extends to only those matters the parties expressly intended to settle. Id.
The release at issue contains general language purporting to release "any and all claims" plaintiff may have against Mrs. Labiche's physician and the Fund. However, it is well settled that a general release will not bar recovery for those aspects of a claim not intended to be covered by the release. La. C.C. art. 3073; Matthew, 310 So.2d at 693. Thus, the first issue is whether plaintiff and defendants intended to include plaintiffs claim for custodial care costs in the July 22, 1993 release.
We first look to the terms of the release in order to ascertain the parties' intent. The first paragraph of the release contains language in which plaintiff acknowledges receipt of a sum of money and agrees to release the physician and the Fund from:
any and all claims, demands, damages, actions, causes of action, suits ... of any whatsoever kind or nature, for or because of any matter ... particularly on account of any and all claims in tort, medical malpractice, breach of contract, and/or informed consent, and including but not limited to any and all physical injuries, wrongful death, survivor action, physical and mental pain and suffering, personal scarring and/or disfigurement, permanent and/or temporary disability, and all cost and expenses related thereto past, present, and future; interest, court costs, attorney's fees, and any and all other elements of damage of whatsoever nature, past, present and future....
In the second paragraph of the release, the Fund identifies a portion of the payment for "full settlement of all surgical, medical, nursing, and hospital expenses", assumes responsibility for other additional, identified past medical expenses, and agrees to pay the future medical expenses of Mrs. Labiche. In the fifth paragraph, plaintiff agrees to hold harmless the physician and the Fund "from any and all claims that may be brought by me or by anyone on account of the injuries, medical expenses, property damage, and other damages or losses sustained, expenses incurred or damages sustained...."
Additional evidence offered by the Fund included a May 27, 1993 letter to counsel for plaintiff acknowledging the Fund's offer to settle. The letter sets out the amount of the Fund offer, specific amounts for past medical expenses, and an agreement to pay future medical expenses, all contingent upon approval by the Board at its June 3 or July 1, 1993 meeting. The first paragraph concludes: "The Fund will not pay past or future custodial care services to a family member." A June 3, 1993 letter from the Fund to plaintiffs counsel confirms the settlement agreement, setting *381 out the specifics of the offer. This letter also concludes with the statement, "The Fund will not pay past or future custodial care services to a family member." At the second hearing before the Board, Margaret Boudreaux, claims adjuster for the Fund, testified the issue of custodial care costs was raised by the plaintiff during settlement negotiations. Ms. Boudreaux stated that "at each set of negotiations [the plaintiff] was told that the Fund would not pay past or future custodial care...." On the list of past expenses submitted to the Fund by plaintiff during negotiations, the item for home-care nursing provided by Mr. Labiche was stricken. Ms. Boudreaux stated this was based on the Fund rule prohibiting payment of custodial care to a family member.
It is clear the release by Mr. Labiche does not include any reservation of rights for his claim for custodial care costs. In addition, the Fund specifically excluded this item from its offer.
We find that, based on the language of the release as well as the other evidence concerning the parties' intent in confecting their agreement, plaintiff and defendants intended to include plaintiffs claim for custodial care costs in the July 22, 1993 release. While there is no reservation of these claims by plaintiff, there is an unambiguous release for all "medical, nursing, and hospital expenses." In addition, there is convincing evidence that these claims were part of the negotiations between the parties and were specifically denied during the bargaining process.
If we find the release included Mr. Labiche's claim for custodial care costs, as we have, plaintiff alternatively asserts the release has no res judicata effect based on a lack of subject matter jurisdiction by the federal court that approved the settlement. The applicability of res judicata depends on the valid jurisdiction of the court which rendered the judgment. Slater v. Slater, 336 So.2d 965, 966 (La.App. 4 Cir.1976). A claim is not barred by res judicata if the court in which the first action was brought lacked subject matter jurisdiction to adjudicate that claim. See La. R.S. 13:4231 Comment (d).
Plaintiff argues, pursuant to Kelty v. Brumfield, 93-1142 (La.2/25/94), 633 So.2d 1210, the federal court did not have subject matter jurisdiction to address the issue of custodial care. Kelty, 93-1142 at 7, 633 So.2d at 1215, held "exclusive original subject matter jurisdiction of the initial disposition of [a plaintiffs medical care] claim [is vested] in the state agency or agencies having exclusive authority to pay, reject, settle, and monitor all claims and to administer the fund from which they must be paid." Kelty went on to invalidate a trial court judgment wherein medical care claims were adjudicated, holding the claims were not subject to the jurisdiction of the court. Kelty, 93-1142 at 14, 633 So.2d at 1219.
However, the Kelty court did not hold that a trial court lacked jurisdiction to approve a settlement between a plaintiff and the Board. In fact, La. R.S. 40:1299.44C(5) requires court approval of a settlement and sets out the exact procedure to follow for court approval. In the instant matter, the parties settled plaintiffs claims for the specified consideration for damages through the date of the settlement. Court approval was required, and clearly, the court had jurisdiction to approve the settlement.
Next, we consider whether, within our discretion, plaintiff should otherwise be relieved from the effect of res judicata. Exceptions to the doctrine of res judicata are contained in La. R.S. 13:4232, which provides in pertinent part:
A. A judgment does not bar another action by the plaintiff:
(1) When exceptional circumstances justify relief from the res judicata effect of the judgment....
The comments to La. R.S. 13:4232 state that this statute gives a court the authority to exercise its equitable discretion to balance *382 the principle of res judicata with the interests of justice under exceptional circumstances. Such exceptional circumstances have been found in Billiot v. LeBeouf Brothers Towing Company, 93-1697, p. 5 (La.App. 1 Cir. 6/24/94), 640 So.2d 826, 829, writ denied, 94-2367 (La.12/9/94), 647 So.2d 1108 (prior judgment of dismissal was merely procedural recognition of no right of action under Longshoremen's Act and did not address Jones Act or general maritime law issues); Fine v. Regional Transit Authority, 95-2603, p. 5 (La.App. 4 Cir. 6/26/96), 676 So.2d 1134, 1137 (the loss of plaintiff's substantive right for damages for physical injuries resulting from the auto accident without being decided on the merits); Brouillard v. Aetna Casualty & Surety Company, 94-1559, p. 4 (La.App. 3 Cir. 5/10/95), 657 So.2d 231, 233 (defendant's delay in supplying plaintiff with requested discovery, objection to an expansion of the pleadings based on the untimely supplied new information at trial, and subsequent plea of res judicata); Jenkins v. State, 615 So.2d 405, 406 (La.App. 4 Cir.), writ denied, 617 So.2d 932 (1993) (horrendous injustice).
Plaintiff argues the rendering of the opinion in Bower v. Schumpert Medical Center, 618 So.2d 600 (La.App. 2 Cir.1993), constitutes an exceptional circumstance worthy of relief from the effects of res judicata. On May 5, 1993, during plaintiff's settlement negotiations with the Fund and known by the Fund but unbeknownst to plaintiff, our brethren of the Second Circuit held the Fund's rule prohibiting payment to medical malpractice victim's relatives for nursing care and custodial care invalid. Bower, 618 So.2d at 604. Plaintiff argues that during negotiations the Fund knew its rule prohibiting these payments was invalid; nevertheless, the Fund continued to assert it was constrained by the payment prohibition rule. Plaintiff argues the Fund's actions constitute an exceptional circumstance.
We do not find exceptional circumstances in this case to justify relief from the res judicata effect. The record establishes the issue of custodial care costs prior to July 22 was a contested item. Plaintiff raised the issue with the Fund on more than one occasion. Even given the rejection of this item by the Fund during negotiations, there was no impediment on plaintiff to reserve this issue. In light of the evidence of plaintiff's intent to settle all claims as of the date of the release, we find no basis for plaintiffs reliance on the exceptional circumstances exception. The trial court's grant of defendants' exception raising the objection of res judicata was proper.

III.
Next, we address the propriety of the dismissal of plaintiff's petition by the district court. Plaintiff asserts the dismissal of his petition was error because it nullifies that portion of the Board's decision granting him post-release custodial care costs. However, dismissal of the plaintiffs petition for review does not vacate the Board's decision. The dismissal of plaintiff's petition seeking review simply ended the adjudicatory process of review, which we perform after reversing the trial court's erroneous holding that the law of the case controlled. The decision of the Board, awarding plaintiff custodial care costs after July 22, 1993, is still in force.

IV.
Lastly, we consider the correctness of the award to plaintiff for post-release custodial care costs in the amount of $6.00 per hour. Plaintiff asserts the award of $6.00 per hour was based on a Board rule that became effective in December 1993; however, the award was for care supplied before the adoption of the rule. Plaintiff seeks an increase in the award.
As stated in the reasons given by the Board, the amount awarded was based, in part, on the Board's December 1993 adoption *383 of a $6.00 per hour reimbursement rate. However, the $6.00 per hour rate was not in effect at the time plaintiff rendered custodial services to his wife. The subsequent adoption of a reimbursement rate was not controlling, and it was error for the Board to rely on the subsequent adoption as support for the award.
Plaintiff testified he received approximately six weeks of specific training from the doctors, nurses, and other staff members at Montelepre on how to provide nursing care to his wife. He was instructed in methods of medication administration and monitoring, physical therapy, range of motion exercises, and how to take vital signs, restricted only from giving injections or drawing blood. In addition to providing these nursing care activities, plaintiff also provided additional care services to his wife, including personal hygiene, preparation of her feeding tube and turning her every two hours. While plaintiff is not a licensed nurse or physical therapist, many of the services he provided for his wife required specialized training and knowledge. We find a fair and reasonable reimbursement rate to be $15.00 per hour. The Board's decision is hereby amended to increase the award to plaintiff for custodial care to a rate of $15.00 per hour.

CONCLUSION
Accordingly, the judgment of the district court dismissing plaintiff's petition based on the law of the case is reversed. The defendants' exception raising the objection of res judicata is maintained. The decision of the Louisiana Patients' Compensation Fund Oversight Board is amended to increase the award to plaintiff to $15.00 per hour. In all other respects, the decision of the Board is affirmed. Costs of this appeal, in the total amount of $1,639.91, are to be divided equally between the parties, plaintiff and defendants to each bear $819.96.
JUDGMENT OF THE DISTRICT COURT REVERSED AND RENDERED; DECISION OF THE LOUISIANA PATIENTS' COMPENSATION FUND OVERSIGHT BOARD AMENDED, AND AS AMENDED, AFFIRMED.